# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDWARD DESHAWN LEE,

        Defendant-Appellant.

FOR PUBLICATION
February 2, 2016
9:00 a.m.

No. 322154
Oakland Circuit Court
LC No. 2012-242158-FH

---

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

WILDER, P.J.

Defendant appeals by delayed leave granted the trial court's order of restitution following his plea of *nolo contendere* to a charge of false pretenses over $20,000, MCL 750.218(5)(a).[1] For the reasons set forth below, we affirm.

This prosecution arose out of the sale of real property located at 5100 Deer Run, Orchard Lake, Michigan. Defendant and three others engaged in a scheme to secure mortgage loans from First Mariner Bank ("the Bank"). Defendant was the loan officer involved in the transactions. Through the scheme, codefendant Jack Kahn secured loans of $1,125,000 and $375,000 for the purchase of the property. An FBI special agent testified that defendant received "over $600,000 from the sale of the property." The Bank sold the loans to investors, but it subsequently repurchased the loans for $1,176,226.13 and $411,000 due to nonpayment. Thereafter, the Bank foreclosed on the property, taking ownership of the premises following a sheriff's sale, at which it made a full credit bid. The Bank later resold the property for $333,000.

Before charges were brought against defendant and his codefendants Kahn and Katherine Kudla, the Bank initiated a civil suit involving the same subject matter.[2] The trial court granted codefendants' motions for summary disposition under MCR 2.116(C)(10), holding that the

---

[1] *People v Lee*, unpublished order of the Court of Appeals, entered July 11, 2014 (Docket No. 322154).

[2] It is not clear whether defendant was named as a defendant in this suit.

Bank's claims were barred because they arose out of a debt that was extinguished as a matter of law by the Bank's full credit bid, such that the Bank was not entitled to any damages.[3]

Defendant pleaded *nolo contendere* to a charge of false pretenses over $20,000, MCL 750.218(5)(a),[4] and was sentenced to a 60-day jail term that was held in abeyance pending successful completion of five years' probation. At the restitution hearing, the prosecutor requested that restitution be ordered in the amount of $1,092,343, and that defendant and codefendants Khan and Kudla be held jointly and severally liable for the total amount of restitution. The trial court issued a restitution order requiring defendant, jointly and severally with Khan and Kudla, to reimburse $1,092,343 to the Bank.[5]

On appeal, defendant contends that the trial court erred in finding that the bank suffered a loss and, therefore, erred in ordering restitution as a matter of law because the Bank is deemed to have received full payment of the $1,125,000 loan through the full credit bid. We disagree.

A trial court's decision to order restitution is reviewed for an abuse of discretion, *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006), which "occurs when the trial court chooses an outcome that falls outside the range of principled outcomes," *People v Gonzalez-Raymundo*, 308 Mich App 175, 186; 862 NW2d 657 (2014). "However, [w]hen the question of restitution involves a matter of statutory interpretation, review de novo applies." *Gubachy*, 272 Mich App at 708 (quotation marks and citation omitted). A trial court's factual findings underlying a restitution order are reviewed for clear error. *Id.*, citing MCR 2.613(C). "A finding is clearly erroneous if this Court is left with the definite and firm conviction that a mistake has been made." *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2012).

Crime victims are entitled to restitution under the Michigan Constitution, Const 1963, art 1, § 24, and the Crime Victim's Rights Act ("CVRA"), MCL 780.751 *et seq. People v Bell*, 276

---

[3] As the prosecution suggests on appeal, it does not appear that the transcript from the civil case was presented in the lower court. Although we usually will not consider evidence that was not presented at the lower court, and the appropriate means for an appellee to amend the record is by motion, *Golden v Baghdoian*, 222 Mich App 220, 222 n 2; 564 NW2d 505 (1997), we will consider the transcript of the proceeding provided by defendant on appeal pursuant to the authority conferred on us by MCR 7.216(A)(4), *People v Nash*, 244 Mich App 93, 99-100; 625 NW2d 87 (2000), as the issue of collateral estoppel was raised in the lower court and the parties do not dispute the authenticity of the transcript.

[4] A charge of conspiracy to commit false pretenses, MCL 750.157a, was dismissed under the plea agreement.

[5] Codefendants Kudla and Kahn applied for and were denied leave to appeal the trial court's restitution order. *People v Kudla*, unpublished order of the Court of Appeals, entered March 21, 2014 (Docket No. 320187); *People v Kahn*, unpublished order of the Court of Appeals, entered September 19, 2014 (Docket No. 322581). The Michigan Supreme Court remanded the *Kudla* case, *People v Kudla*, 497 Mich 909; 856 NW2d 73 (2014), but the parties thereafter stipulated to dismiss the appeal.

Mich App 346, 347; 741 NW2d 57 (2007). Article 1, § 24 of the Michigan Constitution provides that crime victims have "[t]he right to restitution." MCL 780.766 provides, in part:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court *shall* order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . .
>
> * * *
>
> (8) The court shall order restitution to the crime victim services commission or to any individuals, partnerships, corporations, associations, governmental entities, or other legal entities that have compensated the victim or the victim's estate for a loss incurred by the victim to the extent of the compensation paid for that loss. The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the crime. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. However, an order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person or entity under that order is made. The court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss, and the court shall state on the record with specificity the reasons for its action. [Emphasis added.[6]]

The only exception to this mandatory action is when "the victim or victim's estate has received or is to receive compensation for that loss." MCL 780.766(8); see also *Bell*, 276 Mich App at 347. Thus, under the clear statutory language indicating that the sentencing court *shall* order restitution to the victim, "restitution is mandatory, unless the exception applies." *Bell*, 276 Mich App at 347 ("The use of the word 'shall' indicates that the directive to order restitution is mandatory, unless the exception applies."). Notably, the statutory language does not include any mitigating language predicated on the preclusion of recovery, or a finding of no damages, in a separate suit. Accordingly, the court is required to consider the victim's "loss", MCL 780.767(1), and order defendant to "make full restitution." MCL 780.766(2).

---

[6] In relevant part, a victim is "[a]n individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.752(1)(m)(*i*). "For the purposes of MCL 780.766, the term 'victim' includes 'a sole proprietorship, partnership, corporation, association, governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime.' " *Allen*, 295 Mich App at 282, quoting MCL 780.766(1).

In support of his position that the Bank is not entitled to restitution due to its full credit bid on the property, defendant cites *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 68; 761 NW2d 832 (2008), in which this Court stated:

> When a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it. If this credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure, this is known as a "full credit bid." When a mortgagee makes a full credit bid, the mortgage debt is satisfied, and the mortgage is extinguished. [Citations omitted.]

As such, "the full credit bid rule dictates that there are no damages," even in actions involving fraudulent inducement allegations against a nonborrower third party. See *id*. at 72, 74-75, 86. In light of this rule, defendant asserts that, "for restitution purposes, by virtue of its full credit bid, the Bank has been paid back the full amount of the . . . [l]oan, just as if the property had been sold for that amount to a third party, and therefore, has not suffered any loss in connection with the . . . [l]oan." (Emphasis omitted.)

Defendant has failed to identify any authority holding that restitution should be precluded or reduced on the basis of a full credit bid, and we find no basis for this conclusion given the mandatory nature of restitution. Instead, this Court has rejected the argument that an award of restitution may be precluded by the result of civil proceedings, which indicates that the fact that civil damages are not available due to a full credit bid does not necessarily mean that restitution is also unavailable. "[T]he statutory scheme for restitution is separate and independent of any damages that may be sought in a civil proceeding. . . . [R]estitution is not a substitute for civil damages." *In re McEvoy*, 267 Mich App 55, 67; 704 NW2d 78 (2005); see also *Bell*, 276 Mich App at 349 ("The existence of the civil settlement between [the parties] does not relieve the sentencing court of its statutorily mandated duty to order restitution."). Likewise, in *People v Dimoski*, 286 Mich App 474, 481; 286 NW2d 896 (2009), this Court stated that a "civil judgment alone provides no basis for reduction in the restitution award." (Quotation marks and citation omitted.)

> Although the victim will have the benefit of both a civil judgment and a restitution order to obtain monetary relief from the defendant, the availability of two methods does not mean that the victim will have a double recovery, but merely increases the probability that the perpetrator of a crime will be forced to pay for the wrongdoing committed. [*Id*. at 482.]

Accordingly, the mere fact that the Bank may not be entitled to civil damages on the basis of its full credit bid does not render the trial court's restitution order erroneous or excessive or establish that the Bank did not incur any loss due to defendant's conduct.

Moreover, as the prosecution observes on appeal, the Bank did, in fact, incur actual economic loss due to the criminal activities of defendant and his codefendants, as it lost the capital that it dispersed when it provided the loan. Although the Bank ultimately recouped a small portion of the original capital that it lost when it sold the real property that served as the collateral for the loan, it was not until this point that the Bank actually recovered a portion of the

funds that were previously lost. Likewise, the Bank's inability to pursue a deficiency against the borrower, or a fraud claim against a nonborrower third party, following the full credit bid does not, on its own, indicate that the Bank experienced no loss due to the fraudulent scheme and, therefore, was not entitled to restitution, see MCL 780.767(1), or that the Bank was fully compensated for the loss, see MCL 780.766(8).

Finally, as noted by this Court in *Dimoski*, 286 Mich App at 480-481, with regard to MCL 780.766(8):

> In *People v Washpun*, 175 Mich App 420, 425-426; 438 NW2d 305 (1989),[7] this Court explained the two purposes of the provision as follows:
>
> > Two purposes behind the Legislature's inclusion of [MCL 780.766(10)] may be fairly readily discerned. One apparent legislative intent behind subsection (10) is to avoid ordering restitution which would doubly compensate a victim. The abhorrence of double compensation is well established in our jurisprudence. The Legislature wanted to place the financial burden of crime on the criminal, while fully, but not overly, compensating the victim and reimbursing any third party, such as an insurer, who compensated the victim on an interim basis. . . .
> >
> > * * *
> >
> > The second principal effect of subsection (10) would seem to be to prevent application of the "collateral source doctrine" to crime victims' restitution situations. Without such a statutory directive, the victim could recoup damages from the criminal without regard to previous payment from insurance companies or other ancillary sources. By enacting subsection (10), the

---

[7] At the time *Washpun* was decided, the predecessor provision of MCL 780.766(8) was in effect and was located at MCL 780.766(10). *Dimoski*, 286 Mich App at 480. It provided:

> The court shall not order restitution with respect to a loss for which the victim or victim's estate has received or is to receive compensation, including insurance, except that the court may, in the interest of justice, order restitution to the crime victims compensation board or to any person who has compensated the victim or victim's estate for such a loss to the extent that the crime victims compensation board or the person paid the compensation. An order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person under that order is made. [1985 PA 87.]

> Legislature limits restitution to those who have losses which are, as of the time restitution is paid, *still* out of pocket. [Citations omitted.] [Footnoted added.]

Thus, it is clear that the trial court's restitution order as properly applied would not represent a double recovery on the part of the Bank.

Defendant also argues that the Bank was collaterally estopped from seeking restitution. We disagree.

"This Court reviews de novo the application of a legal doctrine, including collateral estoppel." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The doctrine of collateral estoppel requires "that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Id*. at 48 (quotation marks and citation omitted). Stated differently, "[i]n essence, collateral estoppel requires that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.' " *People v Wilson*, 496 Mich 91, 98; 852 NW2d 134 (2014), quoting *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). In some circumstances, courts have recognized the feasibility of "cross-over estoppel," which occurs "[w]hen the application of collateral estoppel 'crosses over' the line between a criminal and civil proceeding." *Trakhtenberg*, 493 Mich at 48. However, the Michigan Supreme Court has previously stated:

> We believe it is important at the outset to recognize that in the body of case law applying this principle the vast majority of cases involve the applicability of collateral estoppel where there are two civil proceedings. Cases involving "cross-over estoppel," where an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa, are relatively recent and rare. [*People v Gates*, 434 Mich 146, 155; 452 NW2d 627 (1990), abrogated in part on other grounds by *Monat v State Farm Ins Co*, 469 Mich 679, 695; 677 NW2d 843 (2004) (recognizing an exception to the mutuality requirement).]

The issue that was decided in the civil case was whether the Bank was entitled to damages in light of its full credit bid. That is not the same as the issue in the instant case, i.e., whether, under the CVRA, the Bank is entitled to restitution as a victim that suffered a loss due to defendant's criminal conduct. As explained above, the amount of civil damages to which one is entitled is not necessarily equivalent to the amount of loss that one has experienced for purposes of the CVRA, and "the statutory scheme for restitution is separate and independent of any damages that may be sought in a civil proceeding." *McEvoy*, 267 Mich App at 67. Additionally,

> [m]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, [t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone

against him. [*Monat*, 469 Mich at 684-685 (quotation marks and citation omitted; second alteration in original.]

There is no indication in the transcript from the civil case that defendant was, in fact, a party or was in privity with a party to the previous suit. Furthermore, even if an exception to the mutuality requirement applied here, see *id.* at 687-695, it is clear that the Bank is not a party to the instant case, despite its status as a victim, and the prosecution was neither a party to the civil suit nor in privity with the Bank.[8] As such, mutuality of estoppel is not present, and the same parties did not have a full and fair opportunity to litigate the issue.

Lastly, defendant contends that the trial court erred in holding all codefendants jointly and severally liable for the victim's loss, arguing that he will face an "excessive burden" if the codefendants do not make a diligent effort to pay down the restitution. We disagree.

With regard to coconspirators, the Michigan Supreme Court has stated:

The Crime Victim's Rights Act provides restitution "to any victim of the defendant's course of conduct that gives rise to the conviction . . . ." The crime of conspiracy involves a defendant's course of conduct and is based upon an unlawful agreement between coconspirators. A conspirator need not participate in all the objects of the conspiracy. In general, each conspirator is held criminally responsible for the acts of his associates committed in furtherance of the common design, and, in the eyes of the law, the acts of one or more are the acts of all the conspirators. The defendant pleaded guilty of conspiracy and accepted restitution set by the court, which he received in exchange for limiting his sentence exposure from life (habitual offender, fourth) to a five-year minimum. The defendant cannot now assert that he is responsible for his acts alone because he is also responsible for the acts of his coconspirators made in furtherance of the conspiracy. [*People v Grant*, 455 Mich 221, 236-237; 565 NW2d 389 (1997) (citations omitted).]

While defendant was not convicted of conspiracy, the same principles apply under the instant facts. The evidence established that defendant acted in concert with three others in a scheme which caused a financial loss to the Bank. As such, defendant is responsible for his acts and for

---

[8] "Privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee v Rogers*, 229 Mich App 547, 553-554; 582 NW2d 852 (1998) (quotation marks and citation omitted). The Bank's interests are not consistent with the prosecution's interests, and the prosecution's interests were not protected in the previous litigation, as the prosecution's duty is to represent the public interest, not to represent the interests of an individual party. See *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142 (2014).

the acts of those with whom he acted in concert to cause the Bank's losses, and we reject defendant's claim.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause