# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plantiff-Appellant,

v

VIRGIL SMITH,

Defendant-Appellee.

FOR PUBLICATION
August 22, 2017

No. 332288
Wayne Circuit Court
LC No. 15-005228-01-FH

Before: RIORDAN, P.J., and SERVITTO and M. J. KELLY, JJ.

RIORDAN, J. (*dissenting*)

I respectfully dissent.

A trial court's decision to set aside a guilty plea is reviewed for an abuse of discretion. *People v Strong*, 213 Mich App 107, 112; 539 NW2d 736 (1995). An abuse of discretion "occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016) (quotation and citation marks omitted). Issues of constitutional law are reviewed de novo. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). In this matter, the trial court abused its discretion.

The majority finds the reasoning of *Leopold v State*, 216 Md App 586; 88 A3d 860 (2014), and *United States v Richmond*, 550 F Supp 605 (ED NY 1982), to be persuasive in reaching its conclusion that it is improper for a public official to voluntarily resign or voluntarily forebear public office as part of a negotiated criminal plea agreement.

Unlike the facts of our case, the trial court in *Leopold* unilaterally imposed a special condition of probation prohibiting the defendant, who had been convicted of two counts of misconduct in office, from "be[ing] a candidate for any local, state, or federal elected office." *Leopold,* 216 Md App at 590 (alteration in original). Further, unlike former Senator Smith, defendant Leopold did not enter into a plea agreement containing the elective office prohibition. Thus, the trial court in *Leopold* did not need to consider whether the defendant voluntarily agreed to the provisions that, I believe, are the issue before us in the instant matter. Rather, the Maryland appellate court considered whether a trial court could unilaterally remove a public officeholder in light of certain provisions of the Maryland constitution. Unlike the Maryland case, we must consider whether the trial court abused its discretion by not enforcing plea

-1-

agreement provisions, and summarily labelling it a "forced resignation" through "prosecutorial domination," without making any type of determination as to whether the defendant voluntary agreed to resignation and forbearance in order to resolve the criminal charges pending against him.

Like the district court judge in *Richmond*, the majority reasons that such voluntary provisions violate the constitutionally mandated separation of powers doctrine. I believe the majority's reliance on the *Richmond* decision also is flawed, as that court considered issues that were moot and, in any event, that were decided wrongly.

The *Richmond* case involved former Congressman Frederick W. Richmond of New York who, in 1982, became the subject of a federal criminal investigation. In an effort to dispose of his criminal liability, on August 25, 1982, he pled guilty to three counts in U.S. District Court in Brooklyn. As part of the plea, he voluntarily resigned from Congress, effective immediately, and also immediately withdrew from the upcoming November election for the then-vacant Congressional seat. In exchange, six other criminal charges against him were dismissed.[1] At his November 10, 1982 sentencing, the judge announced that, in his opinion, the already effectuated resignation and withdrawal conditions of the plea agreement violated the separation of powers doctrine, and infringed upon the constitutional right of the public to select Congressmen of their choosing. *United States v Richmond*, 550 F Supp 605 (ED NY 1982). The district judge's comments concerning the plea bargaining were made after the plea agreement terms dealing with resignation and withdrawal from candidacy had been fully performed and, apparently, were made without the issue having been otherwise raised by the defendant or, seemingly, briefed by the parties. 624. Plea Negotiations with Public Officials – United States v. Richmond, U.S. Attorney's Manual (https://www.justice.gov/usam/criminal-resource-manual-624-plea-negotiations-public-officials-us-v-richmond) (accessed August 17, 2017). The plea agreement was, in all other respects enforced, and since the court's illusory refusal to "accept" the defendant's resignation and non-candidacy plea terms already had been voluntarily completed, the district judge's comments had no impact on the sentence. *Id*. Thus, because of the mootness doctrine, with there being no case and controversy, the separation of powers issues raised by the judge never were subject to appellate review.[2] *Id*.; see also *People v Richmond*, 486 Mich. 29,

---

[1] See Babcock, *Pleads Guilty To Three Charges,* Washington Post (August 26, 1982) (https://www.washingtonpost.com/archive/politics/1982/08/26) (accessed August 17, 2017). Because of the age of the *Richmond* decision, the procedural history of the case is not available through any court records that can be accessed online.

[2] In any event, "[a]lthough state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *Abela v. Gen Motors Corp,* 469 Mich 603, 606; 677 NW2d 325 (2004). Such decisions are not binding on state courts. *Id.* at 607. This is especially so, when the reasoning relied upon is mere *dicta*, as it is in *United States v Richmond*, 550 F Supp 605 (ED NY 1982), and is legally and constitutionally flawed.

34; 782 NW2d 187 (2010) (stating "courts need not reach moot questions or declare principles of law that have no practical effect in the case before it").

Like the judge in *United States v Richmond*, the majority draws upon a Pandora's Box of imaginary issues which it hypothesizes could arise if we allow the defendant the freedom to choose to resolve the very real criminal charges he faces through plea negotiations. In turn, the majority rejects the notion that a public office holder should be afforded the same freedom of choice enjoyed by every other person in Michigan who is the subject of a criminal indictment or charges.

I agree that because of the separation of powers doctrine, defendant's resignation, withdrawal, or forbearance may not be imposed involuntarily by the executive or judicial branches of government against a member of the Legislature. The Michigan Constitution provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 4, § 16; Const 1963, art 3, § 2. See also *Hammel v Speaker of the House of Representatives*, 297 Mich App 641, 646; 825 NW2d 616 (2012); *Mich Taxpayers United, Inc v Governor*, 236 Mich App 372, 379; 600 NW2d 401 (1999). Cf. *Powell v McCormack*, 395 US 486; 89 S Ct 1944; 23 L Ed 2d 491 (1969). Conversely, neither the United States Constitution nor the Michigan Constitution places any prohibitions on a person voluntarily resigning or forbearing future public office. Further, there is nothing to support the majority's claim that the mere possibility of a negotiated plea in a public corruption case, or in a case in which a publicly elected official is charged with criminal wrongdoing, such as the instant matter, "could open the door to the executive branch to use its power of prosecution to remove those from elected office that do not align with the executive's political preferences, under threat of prosecution and likely imprisonment."

Such a blanket assertion is troublesome on many levels. First, it seeks to insulate publicly elected officials from a voluntary mechanism for the efficient resolution of charges of criminal wrongdoing. The majority then limits, without any legal justification other than a naked prediction of the impending demise of the democratic electoral process and the imaginary specter of prosecutors running amok, the ability of a public office holder to freely enter into a plea agreement. Further, it implies that the judiciary in our state is incapable of recognizing instances of potential prosecutorial misconduct. In short, I do not find the majority's public policy doomsday hyperbole to be persuasive. In fact, anecdotally, over the past thirty-five years since the Brooklyn federal district court's dicta in *Richmond*, there have been many instances of elected officials voluntarily resigning office as a result of plea agreements and there is nothing I have found indicating that any of those resignations or forbearances have been the "product of an abuse of power by the executive branch."

My review of the transcript and record in this case confirms that the trial court failed to comply with the provisions of MRE 6.302 and abused its discretion when it determined that permitting the prosecution to withdraw the plea agreement would "subvert the ends of justice." The trial court conducted no meaningful voir dire of defendant regarding the negotiation of the plea agreement, his voluntariness to enter the plea, or his now-purported unwillingness to do so. While the trial court transcript is replete with references to the plea agreement, defendant was never questioned, on the record, regarding whether he was voluntarily resigning and forbearing a

future run for public office or whether he was being forced to enter into such terms. At sentencing, the trial court read the terms of the plea agreement to defendant and then asked him if he understood that the prosecutor would "dismiss Counts II, III and IV in exchange for his plea of guilty" and for a sentence set out in the agreement. Defendant responded, "Yes, your Honor." While this colloquy does not reflect a voluntary resignation and forbearance by defendant, it also does not reflect prosecutorial coercion or domination. In short, there is nothing in the trial court record that supports the trial judge's conclusion that there was "prosecutorial domination" over defendant "through forced resignation." There is nothing even remotely indicating that the prosecutor crossed the threshold of the separation of powers and forcibly tried to remove defendant from office.

In short, I disagree with the majority's blanket prophylactic prohibition on negotiated plea agreements between prosecutors and public elected officials. An elected officeholder should be treated no differently than any other citizen when it comes to the freedom to choose available options for the resolution of criminal matter, nor should any officeholder be forced to remain in office simply because the electorate originally chooses him or her for a position. There is no absolute constitutional right for the electorate to choose any person of their liking to serve in public office. A person must agree to serve. Even if elected, a citizen of the United States, and a citizen of Michigan, is free to decline to serve, or decline to continue to serve, in office.[3] Here, the defendant should have had the option to do just that in the trial court.

Only the defendant can weigh the benefits of assenting to a plea agreement or the potential downsides of rejecting one. If he feels he has been coerced by the prosecution, implicitly or explicitly, he should have the opportunity to inform the trial court of that coercion. If the trial court then voids any terms of, or vacates, the plea agreement, the prosecutor should be afforded the opportunity to reinstate any appropriate criminal charges that were dropped as a result of the agreement. Should the matter eventually go to trial, the trial judge then can consider any evidentiary issues that the defendant wishes to raise relating to the vacated plea agreement. See MRE 104.

---

[3]     For example, President Lyndon B. Johnson told a March 31, 1968 national television audience, "I shall not seek, and I will not accept, the nomination of my party for another term as your president."

Here, in our own state, public officials frequently resign office to pursue other things that they perceive to be in their best interests. Following the majority's reasoning, those who resign from office are legally prohibited from doing so "because the constitutional rights associated with [their] offices were not for [their individual] benefits, but for the benefit of the people who elected [them]." Hence, following the majority's reasoning, just as it believes former Senator Smith has no right to voluntarily resign his office, neither do those who resign public office to pursue other employment or personal opportunities.

I would find that the trial court abused its discretion in denying the prosecution's motion to vacate defendant's plea agreement.

/s/ Michael J. Riordan