Riordan, J. (dissenting)
 

 I respectfully dissent.
 

 A trial court's decision to set aside an accepted guilty plea is reviewed for an abuse of discretion.
 
 People v. Strong
 
 ,
 
 213 Mich.App. 107
 
 , 112,
 
 539 N.W.2d 736
 
 (1995). An abuse of discretion "occurs when the trial court chooses an outcome that falls outside the range of principled outcomes."
 
 People v. Lee
 
 ,
 
 314 Mich.App. 266
 
 , 272,
 
 886 N.W.2d 185
 
 (2016) (quotation marks and
 citation omitted). Issues of constitutional law are reviewed de novo.
 
 People v. Benton
 
 ,
 
 294 Mich.App. 191
 
 , 195,
 
 817 N.W.2d 599
 
 (2011). In this matter, the trial court abused its discretion.
 

 The majority finds the reasoning of
 
 Leopold v. State
 
 ,
 
 216 Md.App. 586
 
 ,
 
 88 A.3d 860
 
 (2014), and
 
 United States v. Richmond
 
 ,
 
 550 F.Supp. 605
 
 (E.D.N.Y. 1982), to be persuasive in reaching its conclusion that it is improper for a public official to voluntarily resign or voluntarily forbear public office as part of a negotiated criminal plea agreement.
 

 Unlike the facts of our case, the trial court in
 
 Leopold
 
 unilaterally imposed a special condition of probation prohibiting the defendant, who had been convicted of two counts of misconduct in office, from "be[ing] a candidate for any local, state, or federal elected office."
 
 Leopold,
 

 216 Md.App. at 590
 
 ,
 
 88 A.3d 860
 
 (quotation marks omitted; alteration in original). Further, unlike former Senator Virgil Smith, defendant Leopold did not enter into a plea agreement prohibiting him from elective office. Thus, the trial court in
 
 Leopold
 
 did not need to consider whether the defendant voluntarily agreed to the provisions that, I believe, are the issue before us in the instant matter. Rather, the Maryland appellate court considered whether a trial court could unilaterally remove a public officeholder in light of certain provisions of the Maryland constitution. Unlike the Maryland court, we must consider whether the trial court abused its discretion by not enforcing plea-agreement provisions and by summarily labeling it a "forced resignation" through "prosecutorial domination," without determining whether the defendant voluntarily agreed to resignation and forbearance in order to resolve the criminal charges pending against him.
 

 Like the district court judge in
 
 Richmond
 
 , the majority reasons that such voluntary provisions violate the constitutionally mandated separation-of-powers doctrine. I believe the majority's reliance on the
 
 Richmond
 
 decision also is flawed, given that the
 
 Richmond
 
 court considered issues that were moot and, in any event, that were decided wrongly.
 

 The
 
 Richmond
 
 case involved former Congressman Frederick W. Richmond of New York who, in 1982, became the subject of a federal criminal investigation. In an effort to dispose of his criminal liability, on August 25, 1982, he pleaded guilty to three charges in United States District Court for the Eastern District of New York. As part of the plea, he voluntarily resigned from Congress, effective immediately, and also immediately withdrew as a candidate for reelection in the upcoming November election. In exchange, six other criminal charges against him were dismissed.
 
 [1]
 
 According to the
 
 Richmond
 
 court,
 the already effectuated resignation and withdrawal conditions of the plea agreement violated the separation-of-powers doctrine, and infringed the constitutional right of the public to select representative of their choosing.
 
 Richmond
 
 ,
 
 550 F.Supp. at 606
 
 . The district judge's comments concerning the plea bargain were made after the plea-agreement terms dealing with resignation and withdrawal from candidacy had been fully performed and, apparently, were made without the issue having been otherwise raised by the defendant or, seemingly,
 briefed by the parties. See United States Department of Justice, Criminal Resource Manual, § 624. Plea Negotiations with Public Officials-United States v. Richmond, available at < < https://perma.cc/8Q59-8A6K>>. The plea agreement was, in all other respects, enforced, and the court's illusory refusal to "accept" the defendant's resignation and noncandidacy had no effect on the sentence because those plea terms already had been voluntarily completed.
 
 Id
 
 . Thus, because of the mootness doctrine, with there being no case and controversy, the separation-of-powers issues raised by the judge never were subject to appellate review.
 
 [2]
 

 Id
 
 .; see also
 
 People v. Richmond
 
 ,
 
 486 Mich. 29
 
 , 34,
 
 782 N.W.2d 187
 
 (2010) (stating that a court need not reach moot questions or declare principles of law that have no practical effect in the case before it).
 

 Like the judge in
 
 Richmond
 
 , the majority refers to a Pandora's box of imaginary issues that it hypothesizes could arise if we allow a defendant who holds public office the freedom to choose to resolve through plea negotiation the very real criminal charges he or she faces. In turn, the majority rejects the notion that a public officeholder should be afforded the same freedom of choice enjoyed by every other person in Michigan who is the subject of a criminal indictment or is faced with criminal charges.
 

 I agree that because of the separation of powers, defendant's resignation, withdrawal, or forbearance
 may not be imposed involuntarily by the executive or judicial branches of government against a member of the Legislature. The Michigan Constitution provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const. 1963, art. 3, § 2. See also
 
 Hammel v. Speaker of the House of Representatives
 
 ,
 
 297 Mich.App. 641
 
 , 646,
 
 825 N.W.2d 616
 
 (2012). Conversely, neither the United States Constitution nor the Michigan Constitution places any prohibitions on a person's decision to voluntarily resign a current office or forbear future public office. Further, there is nothing to support the majority's claim that the mere possibility of a negotiated plea in a public-corruption case or in a case in which a publicly elected official is charged with criminal wrongdoing, such as the instant matter, "could open the door" for the executive branch to use its power of prosecution-and the threat of imprisonment-to remove from elected office those officials
 who do not align with the political preferences of the executive branch.
 

 Such a blanket assertion is troublesome on many levels. First, it seeks to take from publicly elected officials a voluntary mechanism for the efficient resolution of charges of criminal wrongdoing. Then, without any legal justification other than a naked prediction of the impending demise of the democratic electoral process and the imaginary specter of prosecutors running amok, the majority limits the ability of a public officeholder to freely enter into a plea agreement. Further, the majority implies that the judiciary in our state is incapable of recognizing instances of potential prosecutorial misconduct. In short, I do not find the majority's public policy doomsday hyperbole to be persuasive. In fact, anecdotally, over the 35 years since the federal district court's dicta in
 
 Richmond
 
 , there have been many instances of elected officials voluntarily resigning their offices as a result of plea agreements, and I have found nothing indicating that any of those resignations or forbearances have been the product of an abuse of power by the executive branch.
 

 My review of the transcript and record in this case confirms that the trial court failed to comply with the provisions of MCR 6.302 and abused its discretion when it determined that permitting the prosecution to withdraw the plea agreement would "subvert the ends of justice." The trial court conducted no meaningful voir dire of defendant regarding the negotiation of the plea agreement or his voluntariness in entering the plea, or his now-purported unwillingness to do so. While the trial court transcript is replete with references to the plea agreement, defendant was never questioned, on the record, regarding whether he was voluntarily resigning and forbearing a future run for public office or whether he was being forced to enter into such terms. At sentencing, the trial court read the terms of the plea agreement to defendant and then asked him if he understood that the prosecutor would dismiss three counts-felonious assault, domestic violence, and felony firearm-in exchange for his plea of guilty and for a sentence set out in the agreement. Defendant responded, "Yes, your Honor." While this colloquy does not reflect a voluntary resignation and forbearance by defendant, it also does not reflect prosecutorial coercion or domination. In short, there is nothing in the trial court record that supports the trial judge's conclusion that there was "prosecutorial domination" over defendant "through forced resignation." There is nothing even remotely indicating that the prosecutor crossed the threshold of the separation of powers and forcibly tried to remove defendant from office.
 

 In short, I disagree with the majority's blanket prophylactic prohibition on negotiated plea agreements between prosecutors and publicly elected officials. An elected officeholder should be treated no differently than any other citizen when it comes to the freedom to choose available options for the resolution of a criminal matter, nor should any officeholder be forced to remain in office simply because the electorate chose him or her for an elected position. There is no absolute constitutional right authorizing the electorate to choose any person of their liking to serve in public office. A person must agree to serve. Even if elected, a citizen of the United States, and a citizen of Michigan, is free to decline to serve, or decline to continue to serve, in office.
 
 [3]
 
 Here, defendant should have had the option to do just that in the trial court.
 

 Only a defendant can weigh the benefits of assenting to a plea agreement or the potential downsides of rejecting one. If the defendant feels he or she was coerced by the prosecution, implicitly or explicitly, the defendant should have the opportunity to inform the trial court of that coercion. If the trial court vacates or voids any terms of the plea agreement, the prosecutor should be afforded the opportunity to reinstate any appropriate criminal charges that were dropped as a
 result of the agreement. Should the matter eventually go to trial, the trial judge can then consider any evidentiary issues that the defendant wishes to raise relating to the vacated plea agreement. See MRE 104.
 

 I would hold that the trial court abused its discretion when it denied the prosecution's motion to vacate defendant's plea agreement.
 

 See Babcock,
 
 Pleads Guilty To Three Charges,
 
 Washington Post (August 26, 1982), p A1, available at < < httpd://perma.cc/WV3U-QHDU>>. Because of the age of the
 
 Richmond
 
 decision, the procedural history of the case is not available through any court records that can be accessed online.
 

 In any event, "[a]lthough state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts."
 
 Abela v. Gen. Motors Corp.,
 

 469 Mich. 603
 
 , 606,
 
 677 N.W.2d 325
 
 (2004). (citation omitted). That is, the decisions of lower federal courts are not binding on state courts.
 
 Id.
 
 at 607,
 
 677 N.W.2d 325
 
 . This is especially so when the reasoning relied upon is mere
 
 dicta
 
 , as it is in
 
 Richmond
 
 ,
 
 550 F.Supp. 605
 
 , and when the reasoning is logically and constitutionally flawed.
 

 For example, President Lyndon B. Johnson told a March 31, 1968 national television audience, "I shall not seek, and I will not accept, the nomination of my party for another term as your president."
 

 Here, in our own state, public officials frequently resign office to pursue other things that they perceive to be in their best interests. Following the majority's reasoning, those who seek to resign from office are legally prohibited from doing so "because the constitutional rights associated with [the] office were not for [the officeholder's] individual benefit but for the benefit of the people who elected [the officeholder]." Just as the majority believes former Senator Smith had no right to voluntarily resign his office, it follows that neither do those who resign from public office to pursue other employment or personal opportunities.