# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DANIEL HORACEK,

       Defendant-Appellant.

UNPUBLISHED
October 17, 2017

No. 333050
Oakland Circuit Court
LC No. 2015-257030-FH

---

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right from his jury-trial conviction of breaking and entering with intent to commit a larceny, MCL 750.110. Defendant was sentenced as an habitual offender, fourth offense, MCL 769.12, to a prison term of 76 months to 30 years, to be served consecutively to parole. We affirm, but remand for an administrative correction to the judgment of sentence, for a restitution hearing, and for the amendment of the PSIR to reflect decisions the trial court made at the sentencing hearing.

On May 11, 2015, just before 10:30 p.m., security alarms were activated in a dental office in Waterford Township, and police were dispatched. When they arrived, they found no one inside, but the rear door was unsecured. Items in the office had been disturbed, although nothing appeared to have been stolen. The next morning, the dentist and his employees discovered pry marks on doors and damage to door frames. They saw that certain items were out of place in the office but found that nothing was stolen. They provided this information to the officer who was sent to investigate when a security alarm sounded, and that officer returned the next day to receive a downloaded copy of surveillance video from the night of the break-in. When Detective Lawrence Novak, the investigating detective assigned to the case, viewed the video, he did not recognize the person who entered the office, but that person was holding what appeared to be a crow bar. He sent the video to other officers for review, and Detective Michele Miller informed him that she recognized the suspect as defendant following other interactions with defendant arising out of his prior criminal behavior.

## I. ANALYSIS

### A. INSUFFICIENT EVIDENCE

-1-

Defendant first argues that the only evidence of the suspect's identity was prior bad acts evidence introduced at trial and Detective Miller's testimony that she recognized defendant in the dental office security video. He contends, in effect, that the surveillance video from the dental office is of such poor quality that it is not evidence at all, and that the remaining identity evidence cannot support his conviction for breaking and entering with intent. We disagree.

A challenge to the sufficiency of the evidence implicates the defendant's due process rights. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court reviews such a challenge de novo, in the light most favorable to the prosecution, in order to determine whether a rational juror could have concluded that the prosecution proved each essential element of the crime beyond a reasonable doubt. *Id*. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Circumstantial evidence and reasonable inferences that arise from the evidence can sufficiently prove the elements of a crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). "[P]ositive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of testimony identifying a suspect as the defendant is for the trier of fact to determine; this Court does not resolve it anew. *Id*. Nor does this Court substitute its judgment for that of the jury regarding how much weight to give the evidence. *People v Unger*, 278 Mich App 210; 222; 749 NW2d 272 (2008).

The most probative evidence regarding the identity of the perpetrator in this case consisted of the May 11, 2015 surveillance video of the dental office break-in, and defendant's booking photos. We have reviewed this evidence carefully. While some portions of the video were grainy and dark, those portions shot inside the office were both in color and light. This footage shows defendant's hair color and cut, his glasses, his nose, and his bald spot (which was visible at several points when the light reflected from it), along with the general size and shape of his face and head. All of these features are quite similar to those of defendant in the booking photos. The jury had the opportunity to compare these two pieces of evidence. Additionally, the jurors saw defendant in person over the course of the trial, they heard Detective Miller's testimony that she recognized defendant immediately when she viewed the video, and they were presented with evidence of four prior crimes defendant had committed that were similar to the crime in the instant case. Defendant provided no contradictory evidence. The amount of weight to be given to admissible evidence was the province of the jury. *Unger*, 278 Mich App at 222. We will not substitute our judgment for that of the jury. Viewed in the light most favorable to the prosecution, we conclude that this evidence was sufficient for a rational juror to have decided that the prosecution proved defendant's identity beyond a reasonable doubt.

## B. OTHER ACTS EVIDENCE

Defendant argues evidence of his prior criminal acts was not used for a proper purpose, but simply for propensity, and that it was substantially more prejudicial than probative. Defendant additionally argues in his Standard 4 brief that the trial court erred in admitting other acts evidence because he offered to stipulate to the intent element. We disagree.

Decisions to admit evidence, when preserved below, are reviewed for an abuse of discretion, though preliminary questions of law regarding admissibility are reviewed de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). An abuse of discretion occurs when a trial court "makes an error of law in the interpretation of a rule of evidence." *Id*. When the trial court chooses an outcome outside of the range of principled outcomes, it abuses its discretion. *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016).

Evidence of other wrongdoing is governed by MRE 404(b). This rule provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule further provides that such evidence "may, however, be admissible for other purposes, such as proof of . . . intent, . . . scheme, plan, or system in doing an act, . . . [or] identity" as long as it is material to the case being prosecuted. MRE 404(b)(1). The Michigan Supreme Court recently observed that the first sentence of MRE 404(b)(1) "represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 152916); slip op at 9 (citations omitted). The Michigan Supreme Court has also explained that evidence of other acts is admissible under this rule if the following conditions are met:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 53, 55; 508 NW2d 114 (1993), amended 445 Mich 1205; 520 NW2d 338 (1994) (footnote omitted).]

MRE 404(b) "is not exclusionary, but is inclusionary, because it provides a non-exhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). However, a prosecutor's burden regarding other acts evidence is not satisfied by a mere recitation of one or more proper purposes under MRE 404(b); the prosecution must also provide an explanation of "how the evidence relates to the recited purposes[.]" *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). In other words, the prosecution must state one or more proper purposes for the evidence under MRE 404(b) (or otherwise) *and* explain its relevance; i.e. how the proffered evidence will prove an ultimate fact at issue. *Id*. at 388. If the evidence is relevant *only* to prove that the defendant has a propensity to commit bad acts, it must be excluded. "Where, however, the evidence also tends to prove some fact other than character, admissibility depends upon whether its probative value outweighs its prejudicial effect, taking into account the efficacy of a limiting instruction in cushioning the prejudicial effect of the evidence." *Id*. at 385.

Here, the evidence of other wrongs that was put into evidence included testimony and documentary evidence regarding: (1) a break-in and theft (using a pry bar) at a nursery business on May 6, 2015, for which defendant was convicted, including surveillance video capturing the crime; (2) the break-in (using a pry bar) of a Clark gas station on August 21, 1999, where defendant was arrested on the scene and for which he was convicted; (3) an attempted break-in of a Verizon store on November 14, 2009, where there were fresh pry marks on the door frame

and defendant was arrested at the scene and later convicted; and (4) a March 1994 breaking and entering of the Ultimate Family Salon, from which electronics were stolen, and for which defendant was convicted on the basis of fingerprint evidence. The prosecution offered this evidence to show defendant's intent, and to show a common scheme or plan in order to establish identity. These are proper purposes under MRE 404(b)(1). The prosecution also explained why the prior acts evidence was relevant to proving intent and common scheme. Specifically, the prosecution stated that, in the previous cases, defendant employed the same method—pry tools— to gain (or attempt to gain) entry to other businesses in order to steal, and therefore established his intent to steal in the instant case. The prosecution also argued that this evidence would assist the jury in determining that the police did not err when they identified defendant as the perpetrator of the instant crime. "The threshold for relevance is minimal, and *any* tendency is sufficient." *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014). The prosecution has met the second *VanderVliet* requirement because this evidence tends to show more than just propensity; it shows that defendant used the same plan to gain entry in four previous incidents in which his identity was not in doubt because he was caught at the scenes of the crimes. This evidence was relevant.

The third requirement of the *VanderVliet* test requires only the balancing process found in MRE 403. *People v Starr*, 457 Mich 490, 498; 577 NW2d 673 (1998). "Rule 403 allows for the exclusion of relevant evidence if 'its probative value is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.*, citing MRE 403. The trial court is best situated to make this determination because it has the opportunity to make "'a contemporaneous assessment of the presentation, credibility, and effect of testimony.'" *Mardlin*, 487 Mich at 627, quoting *VanderVliet*, 444 Mich at 81. Therefore, this Court defers to the trial court absent "'a clear abuse of discretion.'" *Mardlin*, 487 Mich at 627, quoting *Crawford*, 458 Mich at 383. The other acts evidence is highly probative of defendant's intent and common plan, scheme or system in committing break-ins, and the decision to admit the evidence did not fall outside the range of principled outcomes. Additionally, in this case as in *Roscoe*, "the trial court provided a limiting instruction, which can help to alleviate any danger of unfair prejudice, given that jurors are presumed to follow their instructions." *Roscoe*, 303 Mich App at 646 (citation omitted). Accordingly, it was not an abuse of discretion for the trial court to have admitted the other acts evidence.[1]

## C. LAY OPINION TESTIMONY

---

[1] Defendant's argument that the evidence should have been excluded because he offered to stipulate to intent is without merit. Because defendant pleaded not guilty, the prosecution had the burden of proving every element of the charged crime, "regardless of whether the defendant specifically disputes or offers to stipulate any of the elements." *Crawford*, 458 Mich at 389. Again, identity is an element of every crime. *Yost*, 278 Mich App at 356. Additionally, the other acts evidence was also offered to show defendant's common scheme, plan, or system in committing multiple break-ins. Notably, only one proper purpose is needed for the other acts testimony to be admissible. *Starr*, 457 Mich at 501.

Defendant next argues that Detective Miller's testimony regarding her identification of defendant from the video of the break-in was inadmissible because the jury was capable of viewing the video, seeing defendant in the courtroom, and reaching their own conclusion. We disagree.

Relevant evidence is admissible except when a court rule, or the state or federal constitution, provides otherwise. MRE 402; *Yost*, 278 Mich App at 355. MRE 701 governs the admission of lay opinion testimony. It provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In Michigan, lay opinion testimony regarding video footage of suspects is admissible if (1) the testimony is rationally based on the witness's perception, (2) the testimony is "intended to provide a clearer understanding" of "a fact at issue in the case," and (3) the testimony does not "invade the province of the jury." *People v Fomby*, 300 Mich App 46, 50-52; 831 NW2d 887 (2013).

In *Fomby*, the defendant was tried on charges of first-degree felony murder, armed robbery, and carjacking. *Id*. at 47. The defendant argued that the testimony of a certified forensic video technician about the images in a surveillance video was lay opinion evidence that violated the province of the jury. *Id*. at 48. The crime took place at a BP gas station, and one fact in dispute was whether the defendant was at the gas station earlier on the same night. *Id*. at 49. A police technician examined the entire six-hour video and testified that the two individuals shown committing the crime outside the gas station were also inside the store earlier that day. The technician did not identify the defendant as the individual in the video or the still pictures. *Id*. at 49.

Because MRE 701 is "virtually identical" to FRE 701, this Court turned to federal precedent to aid in reaching its decision. *Id*. at 50. After determining that this testimony constituted lay opinion testimony, this Court analyzed the facts of *Fomby* using the legal standard set forth above. The *Fomby* panel first determined that the technician's testimony was rationally based on his own perceptions from viewing the video; it was not necessary for him to have witnessed the crime himself. *Id*. at 50-51. Next, the panel inferred that this testimony was helpful to the jury because they could review the clips and still photographs he extracted from the six-hour video, making it unnecessary for them to view the entire video. *Id*. at 52. Finally, the *Fomby* panel concluded that the technician's testimony did not invade the province of the jury because his testimony did not extend to whether the defendant was the individual in the two portions of the video. *Id*. at 52-53. The panel cited *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993) and *United States v Rodriguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012) for the proposition that such identity testimony would be admissible only when the witness was in a better position to correctly identify the person in the video than the jury would have been. *Fomby*, 300 Mich App at 52. In *Fomby*, the technician's identification of the defendant *would have* invaded the jury's province, had it been offered, because the witness was not in any better position to decide whether the defendant was the individual depicted than was the jury. *Id*.

In the present case, a review of the record demonstrates that Detective Miller was in a better position to correctly identify the person in the video than was the jury for three reasons. First, the images of the perpetrator's face on the video were less than clear; second, defendant's appearance had changed by the time the trial was conducted; and finally, Miller was very familiar with defendant from the many past professional and in-person contacts she had with him. For these reasons, Detective Miller was " 'more likely to identify correctly the person than [was] the jury.'" *Fomby*, 300 Mich App at 52, quoting *LaPierre*, 998 F2d at 1465. Therefore, the testimony did not invade the province of the jury, and the trial court did not err by admitting it.

### D. MOTION TO ADJOURN TRIAL

Defendant next argues that the trial court abused its discretion when it denied his motion to adjourn his trial after he learned that a planned witness would not be testifying in his defense. We disagree.

Although at all times represented by counsel, defendant presented to the trial court a handwritten, pro se motion to adjourn trial on the morning that trial was set to begin. In his motion, defendant stated that he had learned on Friday, April 15, 2016, that an attorney who had formerly represented him in a civil suit could not or would not testify because of a confidentiality issue. Defendant's stated reason for the adjournment was to gain time to gather documentary evidence to offer instead of this testimony; he stated that he could not mount a full defense or have a fair trial otherwise. In court that morning, defense counsel explained to the trial court that he had spoken with the attorney and learned that there had been a settlement between defendant and the Oakland County Sheriff's Department in an unrelated case. There was a confidentiality provision in the settlement agreement that would require defendant to return the settlement money if he spoke about the agreement. Based on that information, defense counsel decided not to call the former attorney to the stand. Defense counsel informed defendant of that decision on Friday, April 15, 2016, but defendant disagreed and drafted the motion to adjourn.

At defense counsel's request, the trial court allowed defendant to argue this motion on his own behalf. Defendant argued that, with an adjournment, he could bypass the confidentiality issue in the civil case by obtaining documentary evidence in the form of his criminal file from a previous case against him. He stated that these records would show that police officers fabricated evidence and lied under oath in this former criminal case against him, and that Detective Miller was involved in that investigation. However, the prosecution explained that the criminal and related civil cases to which defendant was referring involved allegations of false statements by a detective at the arraignment or pretrial hearing for an unrelated criminal case against defendant, that Detective Miller was only a patrol officer at that time, and was not implicated in defendant's civil lawsuit. According to the prosecution, this evidence was irrelevant and therefore inadmissible. The trial court agreed and denied defendant's motion to adjourn.

Motions to adjourn a trial to secure a witness's testimony are governed by MCL 768.2 and MCR 2.503. *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015); *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). MCL 768.2 provides, in relevant part, "No

adjournments . . . of criminal causes shall be granted by any court except for good cause shown . . . [.]" MCR 2.503(C) provides:

> (1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

> (2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

"Thus, to invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence." *Coy*, 258 Mich App at 18 (citation omitted). Even if a defendant establishes both good cause and diligence, a trial court's decision to deny a request for an adjournment will not be overturned without a showing that the defendant has been prejudiced. *Id*. at 18-19.

Defendant did not demonstrate diligence or good cause in this case. Waiting until shortly before trial to secure a witness is not diligent, but negligent. *Daniels*, 311 Mich App at 267. Defendant may only have learned on the Friday before trial that the expected witness should not testify, but he made no attempt to explain why the witness was not contacted earlier, when the decision to forego his testimony would not have necessitated an adjournment. Additionally, none of the factors to be considered regarding good cause weigh in defendant's favor. Good cause is determined by examining whether the defendant: "(1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Daniels*, 311 Mich App at 266, quoting *Coy*, 258 Mich App at 18. While defendant was asserting a constitutional right to call witnesses in his own defense, he had no legitimate reason to do so in this case because the evidence was not material to the case about to be tried. MCR 2.503(C)(2). The right to call witnesses "is not absolute." *Daniels*, 311 Mich App at 265. Rather, a defendant must comply with the relevant procedural and evidentiary rules. *Id*. MRE 402 provides, in relevant part, "Evidence which is not relevant is not admissible." Allegations of false statements in a previous case by a police officer who has left his employment and has no connection with the current case would not tend to prove any of the issues in the current case, and is not relevant. On this record, defendant has not demonstrated good cause or diligence.

Even assuming defendant had been diligent in seeking this evidence and had good cause for the adjournment, under the circumstances of this case, the trial court's decision to not grant his motion for an adjournment did not prejudice him. Considering that the purpose of the evidence was to show that a police officer once lied under oath in a previous criminal case against defendant, but there is no connection whatsoever to this case, it is hard to imagine how the lack of this evidence could have affected the outcome of this trial. The trial court's decision to not adjourn defendant's trial was proper.

E. HEARSAY / RIGHT OF CONFRONTATION

Defendant argues in his Standard 4 brief that the prosecutor elicited hearsay testimony from two witnesses and that this violated his constitutional right to confront the witnesses against him. We disagree.

We review unpreserved Confrontation Clause claims as other unpreserved issues—for plain error affecting substantial rights. *People v Walker (On Remand)*, 273 Mich App 56, 65-66; 728 NW2d 902 (2006). "In order to avoid forfeiting an unpreserved error, a defendant has the burden of establishing that the '(1) error occurred, (2) the error was plain, i.e. clear or obvious, and (3) the plain error affected substantial rights.'" *People v Osby*, 291 Mich App 412, 414; 804 NW2d 903 (2011), quoting *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). To show that substantial rights were affected, a defendant must establish that the error prejudiced him or her by affecting the outcome of the relevant proceedings. *Walker (On Remand)*, 273 Mich App at 66, quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Preliminary questions of law regarding the admissibility of evidence are reviewed de novo. *Jackson*, 498 Mich at 257.

"'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). See also *People v Kowalak* (*On Remand*), 215 Mich App 554, 557; 546 NW2d 681 (1996) (a neighbor's testimony describing the declarant mother's statement that her son had threatened her shortly before the declarant was murdered was hearsay where it was offered to show that the son had threatened his mother shortly before her murder). An out-of-court statement is not hearsay if it was presented to show "the effect of the comminuted statement on the hearer," because it was not offered for the truth of the statement itself. *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974) (statement was not hearsay when it was elicited to show that the witness's fear was reasonable in order to rehabilitate the witness's testimony about misidentifying the defendant at a lineup).

Here, the challenged testimony was given by the investigating officer in the instant case, Detective Lawrence Novak. Under cross-examination, Detective Novak testified that, as part of his investigation, he reviewed the original surveillance video, which contained time and date stamps, and that he included several of the time entries in his report. He stated that he had believed at the time that the time entries were accurate. Detective Novak further testified that the prosecution had removed the timestamps from the exhibit shown in court because of possible inaccuracy.[2] The prosecution then conducted a redirect examination and asked Detective Novak whether he, at any time, had confirmed that the surveillance system showed the actual correct times. He responded that Melissa Schroeder (a dental office employee) had later advised him that the timing could be off to an unknown extent. As a result, Detective Novak explained, he thereafter believed that the times listed in the report could be inaccurate.

---

[2] As other testimony established, the prosecution did not "remove" the time stamps; the information did not transfer onto the copy of the video that was made so that it could be viewed on the computers of the police and the prosecuting attorneys. This will be discussed further below.

-8-

"'As a general rule a witness should be permitted to explain facts in evidence from which a wrong inference or conclusion is likely to be drawn without an explanation.'" *People v Babcock*, 301 Mich 518; 529; 3 NW2d 865 (1942), quoting I Gillespie, Michigan Criminal Law and Procedure, 387-388. Without explanation, Detective Novak's testimony on cross-examination would have left the jury with the impression that the detective still believed that the time entries in his report were correct.[3] While such explanations cannot consist of inadmissible hearsay, *Prieskorn v Kiehler*, 4 Mich App 679, 681-682; 145 NW2d 397 (1966), Detective Novak's testimony explaining why he no longer believed the time stamps were accurate was not hearsay. The fact in dispute was whether the time stamp on the video was accurate, and it was a material fact because defendant had planned to use an alibi defense. Detective Novak's testimony was not offered to prove that the times were actually wrong; rather it was offered to explain to the jury that he had put information into his report that he later came to believe might be inaccurate. Therefore, where not offered for the truth of the matter asserted, the statement is not hearsay, and therefore was admissible. A separate analysis is required, however, in order to determine whether defendant's right of confrontation was violated when Detective Novak testified as to his belief that the time stamp on the video may have been inaccurate.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Idaho v Wright*, 497 US 805, 813; 110 S Ct 3139; 111 L Ed 2d 638 (1990). Michigan's Constitution likewise states that "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" Const 1963, art 1, § 20. The Confrontation Clause, therefore, "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v Washington*, 547 US 813, 821; 126 S Ct 2266; 165 L Ed 2d 224 (2006), quoting *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "The Confrontation Clause does not, however, bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *People v Putnam*, 309 Mich App 240, 246; 870 NW2d 593 (2015), citing *People v Henry (After Remand)*, 305 Mich App 127, 153; 854 NW2d 114 (2014).

Defendant's first argument regarding his confrontation right is without merit. Specifically, defendant argues that he was deprived of his right to confront his mother after Detective Miller testified that his mother had said he was a drug addict and made other inflammatory statements. There was no error because Detective Miller gave no such testimony. The only reference that Detective Miller made to defendant's mother at trial was to state that defendant looks like her, and that the detective had many dealings with the mother as well.

---

[3] Defense counsel appears to have tried to influence the jury to infer that the time-stamps were accurate because they were placed into a police report. Defendant apparently considered this a material issue, because he argued in his Standard 4 brief that, "the events alleged and the individual that is in the video could not be related as the video clearly showed that the individual in that video left prior to any alarms going off."

Defendant's second argument, that he was deprived of his right to confront Melissa Schroeder, also fails. As discussed above, her statement consisted only of her opinion that the time stamps might be inaccurate. This statement was not part of the prosecution's evidence against defendant; it was elicited on redirect examination of Detective Novak to rehabilitate testimony given on cross-examination. As the Michigan Supreme Court explained in *People v Nunley,* 491 Mich 686, 697; 821 NW2d 642 (2012), the right of confrontation applies "only to statements used as substantive evidence." Indeed, Schroeder's statement could not have been used as substantive evidence in any case, because it conveyed merely her belief that the times on the video *might* be inaccurate. The substantive evidence presented by the prosecution was that the person depicted in the surveillance video from the current case matched defendant's booking photos taken when he was arrested for the crime in this case, and other acts evidence that showed he had engaged in a common plan, scheme or system consistent with that used in break-ins for which he was previously convicted. Because, as discussed above, this evidence was sufficient to support defendant's conviction, Schroeder's comment repeated by Detective Novak could not reasonably be considered to have affected the outcome of the case. Therefore, even assuming it was error, it was not plain error affecting substantial rights.

## F. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed misconduct by removing the time-stamp from the surveillance video to be shown to the jury, and denied him exculpatory material in so doing. We disagree.

We review unpreserved claims of prosecutorial misconduct for "plain error affecting substantial rights." *People v Norfleet*, 317 Mich App 649, 650 n 5; 897 NW2d 195 (2016) (citation omitted). When reviewing a claim of prosecutorial misconduct, we must determine whether defendant was denied "a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007) (citations omitted).

Schroeder, a dental office employee, had the original surveillance video downloaded onto a compact disc, which she marked in her own handwriting and gave to Officer Lamphere the day after the break-in. Officer Lamphere logged that copy into evidence. When Detective Novak attempted to view this first copy on his desktop computer as part of his investigation, he was unable to do so because he lacked the requisite software. This first copy of the surveillance video was admitted at trial as Exhibit 3. Defense counsel indicated that he had received a copy of Exhibit 3, had reviewed it, had shown it to his client, and had no objection. When Detective Novak was unable to view what later became Exhibit 3, he took it to a technician within the police department and had the technician create a copy of the disc using software that would allow Detective Novak to view it on his desktop. As the copy was being made on the technician's computer, Detective Novak reviewed the original (Exhibit 3), at which time the detective took notes, including the time stamp information that he later included in his report. The copy that the police technician created, which did not show the time stamps, was later admitted into evidence as People's Exhibit 4. The technician did not "remove" the time stamps; indeed the detective had no reason to believe at that time that the times were inaccurate.

Like Detective Novak, the prosecution could not view Exhibit 3 on its computer. When the prosecution offered the copy that the technician had made as proposed Exhibit 4, defense

counsel stipulated to its admission because "we" had received it and "we've seen it." He further stated, "We don't have any problem with it being played for the witness's benefit, to the jury's benefit and then I would like to address it during cross." As discussed above, he did address it on cross-examination. Therefore, the prosecution did not "remove" the time stamp from Exhibit 3; rather it did not translate when the police technician copied the material to create Exhibit 4. The prosecution did not withhold this evidence from defendant—defense counsel clearly stated that both he and his client had reviewed Exhibit 3 and Exhibit 4 before trial. There was no prosecutorial misconduct regarding the surveillance video, and no evidence was withheld from defendant. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

## G. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in his Standard 4 brief that trial counsel was ineffective because he failed to object to the prosecutor's introduction of hearsay testimony discussed above, failed to object to the introduction of the surveillance video without the date and time stamp, and failed to respond to the prosecution withholding exculpatory evidence. We disagree.

Ineffective assistance of counsel claims present mixed questions of law and fact. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014). This Court reviews factual questions for clear error and reviews questions of constitutional law de novo. *Id.* Where a claim of ineffective assistance of counsel has not been preserved,[4] our review is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

While a criminal defendant has a fundamental right to effective assistance of counsel, the burden is on the defendant to prove that he did not receive effective assistance from his counsel. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). A defendant must overcome a strong presumption that his counsel's actions and inactions were sound trial strategy. *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008). In order to prevail on this claim, "a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001) (citation omitted). In other words, after demonstrating an unreasonable legal error, a defendant must show that, "but for the error, the result of the proceedings would have been different . . . ." *Id.*

As explained above, defendant has failed to establish any error at all regarding his claims that hearsay evidence from Detective Novak and Detective Miller was improperly admitted, that the prosecution altered the surveillance video, or that the prosecution withheld exculpatory evidence from him. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793

---

[4] A defendant must move in the trial court for a new trial or evidentiary hearing to preserve his claim that trial counsel was ineffective. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court denied defendant's motion to remand for an evidentiary hearing. *People v Horacek*, unpublished order of the Court of Appeals, issued January 11, 2017 (Docket No. 333050).

NW2d 120 (2010) (citation omitted). Defendant's claim that he received ineffective assistance of counsel is unavailing.

## H. REMAND FOR CORRECTIONS

Defendant argues that this case must be remanded to correct various errors. The prosecution does not contest these issues, and we agree that remand for these reasons is appropriate so that his amended judgment of sentence and his PSIR can be corrected, and so that a restitution hearing can be held.

Defendant first argues that he is entitled to remand for corrections to his amended judgment of sentence. "[Q]uestions of law, including the interpretation of statutes" and court rules, are reviewed de novo. *People v Howell*, 300 Mich App 638, 644; 834 NW2d 923 (2013). Judicial construction is unnecessary where the plain meaning of a statute or court rule is clear. *Id*. at 645. MCL 769.1h provides that judgments of sentence that commit a defendant to the Department of Corrections "shall specify whether the sentence is to run consecutively to or concurrently with any other sentence the defendant is or will be serving, as provided by law." If, through oversight or omission, a trial court fails to so specify, the court may correct the error. *Howell*, 300 Mich App at 646, citing MCR 6.435(A). Defendant committed two other breaking and entering offenses in close temporal proximity with the crime charged in the instant case, and pleaded guilty to both. On October 14, 2015, defendant was sentenced to 19 months to 20 years' imprisonment for a break-in that he committed on May 5, 2015, six days before the crime in the instant case. He also received a sentence of 1 to 5 years' imprisonment on March 2, 2016, for an attempted breaking and entering that occurred on May 18, 2015, seven days after the dental office break-in. There is no mention on the amended judgment of sentence of how these two sentences are to be served in relation to the sentence in the instant case. Because it was raised in the sentencing hearing, and the parties both agreed that these sentences should be concurrent, it can reasonably be assumed that the trial court's failure to specify either way how these sentences were to be served was inadvertent. *Howell*, 300 Mich App at 646, citing MCR 6.435(A).

Defendant next argues that he is entitled to remand for a hearing to prove the correct amount of restitution he owes to the victim.

"[W]hen the question of restitution involves a matter of statutory interpretation, the issue is reviewed de novo as a question of law." *People v Dimoski*, 286 Mich App 474, 476; 780 NW2d 896 (2009) (citation omitted). We "review a court's calculation of a restitution amount for an abuse of discretion." *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015) (citation omitted).

Restitution is governed by the Crime Victim's Rights Act, MCL 780.751 *et seq*. Trial courts are required to order defendants to make full restitution to their victims. *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007), citing MCL 780.766(2). Trial courts must resolve disputes over the proper amount of restitution by a preponderance of evidence, and the burden of proof is on the prosecuting attorney. MCL 780.767(4). See also *People v Avignone*, 198 Mich App 419, 424; 499 NW2d 376 (1993) (recognizing that the burden of proof concerning "damage to the victim and the earning capacity of the defendant" rests with the prosecution). It is an abuse of discretion for a trial court to order a defendant to pay an amount in restitution

"without attempting to ascertain the actual amount of the victim's damages." *People v Tyler*, 188 Mich App 83, 89-90; 468 NW2d 537 (1991). Here, defendant contested the recommended amount of restitution and the trial court set a restitution hearing; however, the original amount was ordered without the hearing having taken place. The statute clearly requires a hearing, and the trial court abused its discretion by not requiring the prosecutor to prove the amount of restitution owed. See *Tyler*, 188 Mich App at 90.

Finally, defendant argues that his PSIR must be amended to reflect the changes that the trial court determined were appropriate at the sentencing hearing. We agree.

A trial court's actions in response to a defendant's challenge to the accuracy of information in a PSIR are reviewed for an abuse of discretion. *People v Maben*, 313 Mich App 545, 552; 884 NW2d 314 (2015).

Because of the ramifications that a PSIR has for a defendant in prison, a defendant has a right to challenge the factual information in the report. *Maben*, 313 Mich App at 553, citing MCL 771.14(6) and MCR 6.425(E)(1)(b). If a defendant makes such a challenge, the trial court must hear the parties' arguments and either (1) make a determination as to each challenge, or (2) indicate that a determination is not necessary because the court will not consider the information when sentencing the defendant. *Id*. If the trial court determines that the challenged information is inaccurate, it must direct the probation office to correct it before the PSIR is sent to the Department of Corrections. *Id*. at 553-554. If the court determines that the challenged information will be disregarded for sentencing purposes, it must direct the probation office to delete it, again before the PSIR is sent to the Department of Corrections. *Id*. at 554. Where the inaccurate or irrelevant information did not enter into the trial court's decision regarding the sentence, the court need only make whatever changes to the PSIR "it deems in its discretion to be warranted." *Id*. at 556. Here, the trial court followed the correct procedure at sentencing and made determinations that the challenged information was inaccurate. Neither party disputes those determinations. Therefore, the trial court need only order the probation office to change the PSIR. *Maben*, 313 Mich App at 554. The necessary changes are:

- In the section entitled "Jail Credit," change the arraignment date from December 13, 2015, to December 3, 2015.

- In the section entitled "Criminal Justice" in the subsection entitled "Adult History," make the following changes:

  o Entry 1: Note that defendant disputes the information in the note stating that he was discharged from probation without improvement.

  o Entry 2: Indicate that defendant stated that this case was dismissed and denied that he was given probation or a fine.

  o Entry 8: Note that defendant received a sentence of 2½ to 7½ years on the probation violation, not 2½ to 7 years.

  o Entry 10: Note that defendant was sentenced to 2½ to 15 years on one count only; therefore strike the language of 2½ to 7½ years.

o Entry 23: Change the language from "parole violation pending" to "parole rescinded on 10/22/15."

We affirm defendant's conviction, and remand for a restitution hearing, for corrections to the amended judgment of sentence, and for corrections to the PSIR as specified in this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle