*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KHALIF PIERRE WILL BENTLEY,

      Defendant-Appellant.

FOR PUBLICATION
February 8, 2024
9:10 a.m.

No. 364303
Berrien Circuit Court
LC No. 2019-000264-FC

Before: FEENEY, P.J., and RICK and HOOD, JJ.

HOOD, J.

Defendant Khalif Pierre Will Bentley appeals by leave granted[1] the trial court's restitution order in the amount of $156,849.54, holding him jointly and severally liable for the restitution amount along with his four codefendants. He argues that there was insufficient evidence in the record to support the trial court's finding of actual loss entitling the victim to restitution because of speculation regarding the victim's healthcare coverage and whether the medical provider forgave his debt. The trial court correctly awarded restitution for the victim's medical debt and did not speculate about the possibility that the debt was forgiven. We affirm.

## I. BACKGROUND

This case started with a restitution order, which itself arose out of Bentley's participation in an armed robbery in November 2018. Bentley and his four codefendants traveled from Chicago, Illinois, to Benton Harbor, Michigan, to steal 1½ pounds of marijuana. When the five defendants arrived in Benton Harbor, some of them entered the house. Others, including Bentley, remained in the cars parked outside. During the robbery, one of the codefendants pointed a gun at Hunter Lutz, the victim in this case. When Lutz attempted to knock the gun away, Bentley's codefendant fired and shot Lutz in the neck. Lutz was hospitalized for approximately two weeks following the shooting. He sustained two broken vertebrae and two broken ribs, and he was in a coma for five

---

[1] *People v Bentley*, unpublished order of the Court of Appeals, entered March 7, 2023 (Docket No. 364303).

days. By the time of the restitution hearing, doctors had performed approximately 10 surgeries, including a tracheotomy. Lutz had to relearn to walk and talk. He was hospitalized from November 3, 2018, to November 19, 2018. This resulted in a bill of $155,569.54 that he received in May 2019. This bill, as opposed to future treatment or lost wages, is at issue in this case.

Bentley pleaded guilty to armed robbery causing serious injury, MCL 750.529. His plea agreement provided a sentencing agreement of 10 to 35 years' imprisonment. The parties left open the issue of restitution. At his plea hearing, Bentley admitted to his role in the armed robbery. He did not carry a firearm during the robbery, or even enter the apartment, but he knew that his confederate was carrying a firearm. In separate proceedings, Lutz was charged for drug trafficking, but the case against Lutz was dismissed prior to Bentley's restitution hearing.

The trial court held a restitution hearing in July 2022.[2] At the hearing, the prosecutor introduced the bill that Lutz received from Lakeland Health Hospital (Lakeland) in the amount of $155,569.54. The prosecutor also offered Lutz's credit report as evidence of a debt of $680 to Sun Coast Anesthesiology, instead of a bill. Lutz testified that he had not paid toward the bill from Lakeland, but he had paid $600 toward the bill from Sun Coast Anesthesiology (suggesting the original Sun Coast bill was $1,280). Lutz testified that his insurer, Blue Cross Blue Shield, denied his claim for coverage because the injuries that he sustained occurred during his participation in criminal activity. At the time of the hearing, no one from Lakeland had contacted Lutz regarding the outstanding bill, beyond sending its initial bill. There was no evidence that Lakeland had made attempts to collect, and there was no evidence that Lakeland had forgiven the debt. The debt did not appear on Lutz's credit report.

At the restitution hearing, Bentley and his codefendants argued that the court should not order restitution, arguing primarily that there was no evidence that Lakeland pursued collection of Lutz's bill nor that Lutz had made any payments toward the bill. According to Bentley and his codefendants, Lutz therefore had not sustained an actual loss and ordering restitution was improper.

The trial court rejected this argument, noting that the bill from Lakeland Health Hospital itself was the manner in which most businesses communicate to a client that a debt is owed. It, therefore, represented Lutz's debt owed to Lakeland Health Hospital. The fact that Lutz had made no payments toward the bill was immaterial because he was nevertheless indebted to Lakeland Health Hospital. The trial court ordered that Bentley and his codefendants pay $156,849.54 in restitution, reasoning that the two bills were reasonably authentic and provided sufficient proof of Lutz's loss. The trial court concluded that evidence in the record supported the amount ordered in restitution. Bentley now appeals.

---

[2] The delay between his plea and sentencing was at least in part due to the COVID-19 pandemic's impact on court operations. Bentley and his co-defendants elected to exercised their right to be physically present for the contested restitution hearing.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion the trial court's calculation of a restitution amount, while reviewing the trial court's factual findings for clear error. *People v Foster*, 319 Mich App 365, 374; 901 NW2d 127 (2017). A trial court abuses its discretion when it chooses an outcome outside of the range of principled outcomes, *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016), or when it makes an error of law, *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013); *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015) (relating to restitution orders specifically, "[a] trial court may abuse its discretion by blurring the distinction between a civil remedy for damages and the criminal penalty of restitution."). The proper application of MCL 780.766(2) and MCL 769.1a, which authorize the trial court to award restitution, is a matter of statutory interpretation which we review de novo. *Foster*, 319 Mich App at 374. See also *People v Cross*, 281 Mich App 737, 739; 760 NW2d 314 (2008).

## III. RESTITUTION

At its core, Bentley argues that there was insufficient evidence in the record to support the trial court's restitution order. More specifically, he argues that the evidence—particularly evidence that the victim's health insurance covered his medical expenses or that the healthcare provider forgave the medical debt—did not provide a reasonably certain factual foundation for the restitution amount, rendering the amount ordered speculative. Bentley asserts that the insufficiency of evidence resulted in a due process violation requiring this Court to set aside the restitution order. We disagree.[3]

### A. RESTITUTION UNDER THE CRIME VICTIM'S RIGHTS ACT AND THE GENERAL RESTITUTION ACT

This case requires our understanding and analysis of the statutes that entitle crime victims like Lutz to restitution.

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning

---

[3] At the outset, we note that Bentley frames the issue on appeal as a violation of his constitutional right to due process, arguing that the trial court ordered restitution not supported by facts in the record and, as a result, imposed an invalid sentence premised on inaccurate information. At their core, insufficient-of-the-evidence claims are due process claims. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "[I]t is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds." *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003). Rather, "pursuant to the widely accepted and venerable rule of constitutional avoidance," this Court may instead resolve this issue on statutory grounds. *People v McKinley*, 496 Mich 410, 415-416; 852 NW2d 770 (2014). As such, Bentley's claim is addressed from the perspective of applicable statutes and caselaw.

and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a term of art with a unique legal meaning. [*People v DeBono*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362041); slip op at 3 (quotation marks and citation omitted).]

Crime victims have a constitutional and a statutory right to restitution. See Const 1963, art 1, § 24; MCL 780.766; *Cross*, 281 Mich App at 739; *People v Turn*, 317 Mich App 475, 479; 896 NW2d 805 (2016). Two primary statutes authorize and require the court to order restitution. See *Foster*, 319 Mich App at 375, citing MCL 769.1a and MCL 780.766. First, the general restitution statute, MCL 769.1a, provides in relevant part:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a felony, misdemeanor, or ordinance violation, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. [MCL 769.1a(2).]

Second, MCL 780.766(2), which falls under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*, also provides for restitution and states in relevant part:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court *shall* order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. [MCL 780.766(2) (emphasis added).]

\* \* \*

> (8) The court shall order restitution to the crime victim services commission or to any individuals, partnerships, corporations, associations, governmental entities, or other legal entities that have compensated the victim or the victim's estate for a loss incurred by the victim to the extent of the compensation paid for that loss. The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the crime. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. However, an order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person or entity under that order is made. *The court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss*, and the court shall state on the record with specificity the reasons for its action. [MCL 780.766(2), (8) (emphasis added).]

Despite some differences between these two statutes,[4] both mandate restitution. See *Lee*, 314 Mich App at 273-274. Under the CVRA, the prosecution bears the burden of proving the amount of the victim's loss, and the court must resolve any dispute regarding the proper amount of restitution, by a preponderance of the evidence. See MCL 780.767(4). Notably, neither the CVRA nor the general restitution statute define "full restitution," but under the plain meaning of the word "full," both statutes "impose a duty on sentencing courts to order defendants to pay restitution that is maximal and complete." *People v Garrison*, 495 Mich 362, 368; 852 NW2d 45 (2014). Although restitution must be maximal and complete, there must also be a "direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded." *People v McKinley*, 496 Mich 410, 421; 852 NW2d 770 (2014). Therefore, "restitution may encompass only those losses that are easily ascertained and are a direct result of a defendant's criminal conduct." *Corbin*, 312 Mich App at 362 (quotation marks and citations omitted).

The only real exception to mandatory restitution is when "the victim or the victim's estate has received or is to receive compensation for that loss . . . ." *Lee*, 314 Mich App at 274, citing MCL 780.766(8) and *Bell*, 276 Mich App at 347. "Thus, under the clear statutory language indicating that the trial court shall order restitution to the victim, restitution is mandatory, unless the exception applies." *Lee*, 314 Mich App at 274 (quotation marks and emphasis omitted). A court therefore may not order restitution for losses that are covered by insurance. See *Corbin*, 312 Mich App at 360. But restitution is separate and independent from damages sought in a civil proceeding. See *Lee*, 314 Mich App at 275 (collecting cases, including *People v Dimoski*, 286 Mich App 474, 481; 780 NW2d 896 (2009), which, relevant here, held that a "civil judgment alone provides no basis for reduction in the restitution award").

Put simply, the amount of restitution must be based on the *actual* loss suffered by the victim. *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012). The standard for calculating a restitution award under the CVRA is "simply one of reasonableness." *Corbin*, 312 Mich App at 365. The language of the statute "does not suggest the need for absolute precision, mathematical certainty, or a crystal ball." *Id*. But "speculative or conjectural losses" are not

---

[4] Despite significant overlap, there are critical differences between these two statutes. Under the CVRA, a "victim" is defined as "an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.766(1). Restitution available under the CVRA can "compensate victims for losses associated with either physical or psychological injury." *Corbin*, 312 Mich App at 359. Notably, an order of restitution can require a defendant to "[p]ay an amount equal to the reasonably determined cost of medical and related professional services and devices actually incurred and reasonably expected to be incurred relating to physical and psychological care." MCL 780.766(4)(a). The key difference between the CVRA and the general restitution statute is that the general restitution statute permits restitution only for "actual medical and related professional services and devices relating to physical and psychological care." MCL 769.1a(4)(a). The general restitution statute, therefore, does not appear to contemplate future expenses that are reasonably expected to be incurred. See *Corbin*, 312 Mich App at 360.

deemed "reasonably expected to be incurred" under the CVRA. *Id*. (quotation marks omitted). See also *In re White*, 330 Mich App 476, 483; 948 NW2d 643 (2019) ("The restitution calculation cannot be premised on speculative or conjectural loss, but, rather, the evidence must support a reasonably certain factual foundation for the amount."). Therefore, "[w]here the evidence provides a reasonably certain factual foundation for a restitution amount, the statutory standard is met." *Corbin*, 312 Mich App at 365.

To that end, "[w]hen determining the amount of restitution to award a victim, the focus is consistently not on what a defendant took, but what a victim lost because of the defendant's criminal activity." *In re White*, 330 Mich App at 483 (quotation marks and citation omitted). Moreover, "[r]estitution is not designed to provide a windfall for crime victims, but was created to ensure that victims are made whole for their losses to the extent possible." *Id*. at 480.

## B. LUTZ'S BAD CONDUCT DOES NOT EXCLUDE HIM OR DEFENDANTS FROM THE RESTITUTION FRAMEWORK

Here, in addition to his arguments regarding actual loss, Bentley also argues that because Lutz was engaged in illegal activities during the commission of the armed robbery, it was improper to award him restitution as a victim of Bentley's criminal conduct. We disagree.

First, Lutz was unquestionably a victim within the terms of the CVRA and the general restitution statute, both of which entitled him to restitution. See MCL 780.766(1); MCL 769.1a(4). Lutz was a victim under the CVRA and the general restitution statute because he suffered a direct physical and financial harm as a result of Bentley's commission of armed robbery. At Bentley's plea hearing, he admitted, under oath, that Lutz was the victim in the case. Bentley confirmed that, as a result of the armed robbery, Lutz was shot in the neck, was hospitalized for approximately two weeks, was in a coma for five days, had two broken vertebrae and two broken ribs, and had to relearn to walk and talk. Lutz, therefore, suffered a direct physical injury as a result of Bentley's commission of armed robbery. Lutz further suffered a direct financial harm as a result of Bentley's criminal conduct. Lutz received a bill from Lakeland Health Hospital in the amount of $155,569.54 and a debt owed to Sun Coast Anesthesiology appeared on his credit report in the amount of $680. These bills reflect the cost of the required care during his recovery from the injuries that he sustained during Bentley's armed robbery. On the basis of this physical and financial harm, Lutz was properly considered a victim under the CVRA and the general restitution statute.

Second, Bentley's reliance on MCL 780.752(3) is misplaced. Under the CVRA, "[a]n individual who is charged with a crime arising out of the same transaction from which the charge against the defendant arose is not eligible to exercise the privileges and rights established for victims . . . ." MCL 780.752(3). This Court has not previously addressed the interpretation of "arising out of the same transaction" under the CVRA. However, in other contexts, this Court has held that actions arise from the same transaction or occurrence "only if each arises from the identical events leading to the other . . . ." *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 156; 532 NW2d 899 (1995) (quotation marks and citation omitted); see also *Kloian v Schwartz*, 272 Mich App 232, 243; 725 NW2d 671 (2006) (stating the same). We now adopt and apply this framework for MCL 780.752(3).

-6-

Lutz was charged for his drug-related activity in connection with the armed robbery, but the charges were ultimately dismissed. Putting aside the fact that Lutz's charges were ultimately dropped, the charge would not preclude Lutz from the restitution awarded in this case because Lutz's drug-related charge did not arise out of the same transaction as Bentley's conviction: namely, the armed robbery and conspiracy to commit armed robbery. The event leading to Lutz's since-dismissed drug charge was his involvement in drug-related activities. The event leading to Bentley's charge (and Lutz's injuries) was the execution of his plan to steal 1½ pounds of marijuana. Although Lutz's drug-related activity may have set the stage for Bentley's armed robbery, Bentley's actions caused a significant detour in the events leading up to the incident such that the two charges did not arise out of the same transaction. The text and context of MCL 780.752(3) does not bar someone in Lutz's position from restitution. Rather, it would bar Bentley or one of his codefendants from recovering restitution against each other, had one of them been shot during the robbery they committed. Here, Lutz's potential (or even likely) involvement in an illegal activity separate from the armed robbery does not have any bearing on his status as a victim of Bentley's armed robbery for the purposes of restitution.

## C. RESTITUTION AWARD WAS BASED ON ACTUAL, NONSPECULATIVE LOSS

Bentley's primary argument is that the prosecution failed to satisfy its burden of showing by a preponderance of the evidence that Lutz suffered an actual, nonspeculative loss. We disagree.

As stated, the prosecution must prove by a preponderance of the evidence that the victim suffered an actual loss. *In re White*, 330 Mich App at 483. And to the extent that the loss was medical bills, losses covered by health insurance are not included in restitution. See *Corbin*, 312 Mich App at 360. At the restitution hearing, defense counsel argued that, because Lakeland Health Hospital was not actively pursuing collection from Lutz's bill, the invoice was neither an actual nor expected debt, and, therefore, not a loss. The trial court properly rejected this argument, finding that, regardless of Lakeland Health Hospital's failure to pursue collection, Lutz was nonetheless indebted to Lakeland Health Hospital. Indeed, as the trial court noted, a bill is the typical manner in which businesses communicate to clients that a debt is owed for services. Lutz's obligation to pay for these services will continue until the bill is paid in full. There is no language in either the CVRA or the general restitution statute that requires a victim to have already paid the debt owed in order for it to properly be considered a loss. Lutz's debt (and therefore his loss) exists whether Lakeland attempts to collect or not. Therefore, because the medical bills that Lutz received were a result of the care that he required to recover from injuries that he sustained as a result of Bentley's criminal conduct, the debt that Lutz owes was a loss for purposes of restitution.

Relatedly, Bentley argues that the restitution order is speculative because the medical bills were nearly four years old at the restitution hearing and no evidence was presented that Lakeland Health Hospital intended to collect the debt that Lutz owed—effectively the debt was forgiven. The amount of restitution ordered by the trial court was reasonably ascertained by Lutz's medical bills. Bentley's primary contention was that, without proper authentication and updated billing statements, there was no means of guaranteeing that Lutz continued to owe Lakeland Health Hospital money. Lutz testified that Lakeland Health Hospital never sent him an updated bill, nor followed up with him to inquire about making payments on the bill. However, as discussed earlier, a bill is a typical manner in which businesses indicate to clients that a debt is owed. It is reasonable

for Lutz to believe that, until given notice otherwise, the bill is outstanding and he continues to be obligated to pay it.

This argument implicates the purposes of restitution as contemplated by the CVRA and repeatedly stated by this Court, most recently in *People v Lee*, 314 Mich App at 276-277:[5]

> As noted by this Court in *Dimoski*, 286 Mich App at 480-481; 780 NW2d 896, with regard to MCL 780.766(8):
>
>> In *People v Washpun*, 175 Mich App 420, 425-426; 438 NW2d 305 (1989), this Court explained the two purposes of the provision as follows:
>>
>>> Two purposes behind the Legislature's inclusion of MCL 780.766(10) may be fairly readily discerned. One apparent legislative intent behind subsection (10) is to avoid ordering restitution which would doubly compensate a victim. The abhorrence of double compensation is well established in our jurisprudence. The Legislature wanted to place the financial burden of crime on the criminal, while fully, but not overly, compensating the victim and reimbursing any third party, such as an insurer, who compensated the victim on an interim basis.
>>>
>>> * * *
>>>
>>> The second principal effect of subsection (10) would seem to be to prevent application of the "collateral source doctrine" to crime victims' restitution situations. Without such a statutory directive, the victim could recoup damages from the criminal without regard to previous payment from insurance companies or other ancillary sources. By enacting subsection (10), the Legislature limits restitution to those who have losses which are, as of the time

---

[5] MCL 780.766(10) was the predecessor to MCL 780.766(8) and provided:

> The court shall not order restitution with respect to a loss for which the victim or victim's estate has received or is to receive compensation, including insurance, except that the court may, in the interest of justice, order restitution to the crime victims compensation board or to any person who has compensated the victim or victim's estate for such a loss to the extent that the crime victims compensation board or the person paid the compensation. An order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person under that order is made. [MCL 780.766(10), as enacted by 1985 PA 87. See also *Dimoski*, 286 Mich App at 480.]

restitution is paid, still out of pocket. [Cleaned up; footnote from *Lee* omitted.]

In *Lee*, this Court upheld a restitution award where the defendant, a loan officer, pleaded no contest to a false-pretenses charge related to a mortgage-fraud scheme. *Lee*, 314 Mich App at 270-271, citing MCL 750.218(5)(a). The bank sold the fraudulently obtained loans to investors, but subsequently repurchased the loans at a substantial loss due to nonpayment. *Id*. at 270. The bank then foreclosed on the property securing the loans, taking ownership after making a full-credit bid at a sheriff's sale. *Id*. It later resold the property. *Id*. This Court, relying largely on the aforementioned purposes of restitution, held that the bank's repurchase of the property through a full-credit bid at a sheriff's sale did not foreclose restitution. *Id*. at 272-277.

Likewise, here, we find no statutory authority that excludes Lutz from the restitution framework on the basis that the hospital might have forgiven his debt or that he might have had insurance. These bases require speculation and require us to ignore the evidence presented to the trial court that Lutz has incurred a real medical debt, and insurance will not cover it. See *Corbin*, 312 Mich App at 361. Ultimately, as a victim under the CVRA, Lutz was entitled to full restitution for the loss that he sustained as a result of Bentley's criminal conduct. In this case, the trial court ordered restitution supported by the Lakeland Health Hospital bill and credit report indicating a bill owed to Sun Coast Anesthesiology, which were found to be authentic by the trial court. We are satisfied that these documents provided "a reasonably certain factual foundation for [the] restitution amount . . . ." *Corbin*, 312 Mich App at 365. Therefore, the statutory standard of reasonableness was met. Regardless of whether Lutz made any payments toward the bills or whether Lakeland Health Hospital actively pursued collection of the debt owed, the bills allowed the trial court to reasonably ascertain the amount owed in restitution. As a result, the trial court did not abuse its discretion when it ordered $156,849.54 in restitution.

Finally, we observe that the CVRA also permits a court to amend a restitution order on a motion by the defendant "based upon new information related to the injury, damages, or loss for which the restitution was ordered." MCL 780.766(22). Therefore, if Lakeland Health Hospital were to forgive Lutz's obligation to pay his bill, Bentley could move to amend the restitution award to reflect that.

We affirm.

/s/ Noah P. Hood
/s/ Kathleen A. Feeney
/s/ Michelle M. Rick

-9-